**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|    Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-07-57 |
| | § | C.A. No. C-09-196 |
| ROBERT WILLIAM AYERS III, | § | |
| | § | |
|    Defendant/Movant. | § | |

**ORDER DISMISSING MOTION  TO VACATE,
SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Robert William Ayers III's ("Ayers") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 98.)[1]  It and his supporting memorandum (D.E. 99) were received by the Clerk on August 10, 2009.    Shortly thereafter, Ayers filed an amendment/supplement with memorandum (D.E. 101, 102), which contained supplemental claims. The Court ordered the government to respond (D.E. 100), and the United States filed a combined motion for summary judgment and alternative response and motion to dismiss in which it argues that Ayers should be denied relief.  (D.E. 104-106.)  Ayers sought and received a motion for extension of time to file his reply (D.E. 107-08), and filed his reply on November 19, 2009.  (D.E. 109).  On March 26, 2010, he also filed a motion for leave to file a supplemental exhibit.  The Court GRANTS that motion (D.E. 110) and has considered his supplemental exhibit, as well.

As discussed in detail herein, Ayers' § 2255 motion contains a number of different claims. Some of these allege that he was denied effective assistance of counsel during his plea negotiations and directly challenge the validity of his plea agreement.  These claims, which arguably fall outside

---

[1] Dockets entries refer to the criminal case, C-07-cr-57.

the scope of his waiver of § 2255 rights, fail on their merits.  His remaining claims are subject to

dismissal because he waived his right to file those claims.   Even if they were properly before the

Court, moreover, they fail on their merits.  For these reasons, discussed in more detail herein, the

Court DENIES his § 2255 motion.   Additionally, the Court DENIES Ayers a Certificate of

Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II.  FACTS AND PROCEEDINGS**

**A.      Summary of the Offense[2]**

On January 25, 2007, a recreational vehicle (RV) entered the Falfurrias, Texas U.S. Border

Patrol Checkpoint for an immigration inspection.   The driver was identified as Jenny Surface.

Surface advised the agent that there were two additional passengers in the RV, later identified as

Jack Dorman (Surface's boyfriend) and Ayers.   During the immigration inspection, the service

canine alerted to the RV.  Once in secondary, the canine boarded the RV and alerted to the bathroom

located in the back of the RV.  The agent discovered bundles of marihuana stacked up to the ceiling

in the bathroom.  Additional bundles were discovered underneath the bed in the back of the RV.  A

total of 32 bundles of marihuana with a net weight of 410 kilograms were discovered.

**B.      Criminal Proceedings**

On February 14, 2007, Ayers, Surface and Dorman were all charged as co-defendants in a

single-count indictment. (D.E. 16.)  The indictment charged them with knowingly and intentionally

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 9 of Ayers'
Presentence Investigation Report ("PSR").

2

possessing with intent to distribute approximately 410 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. (Id.)

On March 15, 2007, Ayers pleaded guilty to Count One pursuant to a written plea agreement with the government. (D.E. 29, 35.) The plea agreement provided that, in exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government would recommend that he receive the maximum credit for acceptance of responsibility and recommend a sentence at the low end of the applicable guideline range. (D.E. 35 at ¶ 2.) The plea agreement contained a voluntary waiver of Ayers' right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 35 at ¶ 7) (emphasis in original). The agreement was signed by both Ayers and his counsel, Edward Garza. (D.E. 35 at 5.)

At Ayers' rearraignment, the Court specifically questioned Ayers under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: One more right that you are giving up under this plea agreement that I want to go over with you and that's the right to file a post-conviction remedy. It's also called a writ of habeas corpus or a statutory 2255. You would ordinarily have the right in this case to

3

try to, to file a motion to try to set aside your conviction and/or your sentence by challenging such matters as constitutionality, jurisdiction or ineffective assistance of counsel, to name a few.  If you go forward today you give up that right as to this case forever.  Do you understand that?

\*\*\*

THE COURT: Mr. Ayers?

DEFENDANT AYERS: Yes, Your Honor.

(D.E. 73, Rearraignment Transcript ("R. Tr.") at 24-25.)  It is clear from the foregoing that Ayers' waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

Additionally, Assistant United States Attorney Salinas-Patterson referenced the waiver of § 2255 rights in her summary of the plea agreement, stating that the defendants pleading guilty were "giving up their right to contest or collaterally attack the conviction or sentence after that conviction or sentence has become final."  (R. Tr. at 26-27.)  After hearing that summary, Ayers testified that the summarized agreement was his plea agreement, that it was the correct agreement, and that he understood it.  (R. Tr. at 27.)  Ayers also testified that no one had made him any other promises or agreements other than what was contained in the written agreement, and that no one had promised him leniency, a motion for downward departure or safety valve.  (R. Tr. at 27-28.)

The Court then showed him the plea agreement.  Ayers identified it as his plea agreement, and told the Court it was his signature on the last page.  (R. Tr. at 29.)  Ayers testified that he had read the document completely before he signed it and that he had discussed it completely with his attorney before he signed it. (R. Tr. at 29.)  Ayers further testified that no one had forced him to plead guilty and that his decision to plead guilty was entirely voluntary.  (R. Tr. at 36-37.)

The Court inquired as to whether Ayers had discussed with his attorney how the Sentencing Guidelines might apply in his case, and Ayers said that he had.  (R. Tr. at 32.)  He also told the Court that he understood his attorney's opinion of the guidelines was not necessarily the same as the Court's.  (R. Tr at 35-36.)  Additionally, the prosecutor stated at the rearraignment that she thought Ayers might receive an enhancement for his role in the offense.  (R. Tr. at 34.)  Specifically, she thought the evidence would support a two-level increase for his leadership role.  (R. Tr. at 34-35.)  Ayers told the Court that he had discussed that with his attorney.  (R. Tr. at 35.)

After the Court accepted Ayers' guilty plea, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR").  (D.E. 33.)  The PSR found a total offense level of 31 and a criminal history category of VI, resulting in an advisory guideline range of 188 to 235 months.  (PSR at ¶ 79.)

Ayers, through counsel, filed written objections to the PSI. (D.E. 36.)  Specifically, counsel objected to the Probation Officer's determination that the three convictions set forth in Paragraphs 40, 41 and 42 constituted separate offenses, thereby supporting Ayers' classification as a career criminal.[3]  Counsel argued that although the three offenses were committed on different dates, they were "essentially consolidated for sentencing purposes" and that they should be treated as related. Counsel cited to <u>United States v. Delvecchio</u>, 920 F.2d 810 (11th Cir. 1991) for support.  (D.E. 36 at 1-2.)  Counsel also objected to the career offender guideline and enhancement on the ground that it significantly over-represented the seriousness of the defendant's criminal history.

---

[3] Even without the career offender designation, Ayers' criminal history category still would have been a VI.  (This was true despite the fact that Ayers had a large number of convictions that were not scored due to their age.)  The career offender designation, however, resulted in a three-level increase in his offense level.  (PSR at ¶ 22.)  Thus, it did have an impact on his guideline range.

Finally, counsel objected to the PSR's determination that Ayers' role in the offense warranted a three-level adjustment and objected to Ayers receiving any type of leadership enhancement.   The objections argued that Ayers was not an organizer, leader, manager or supervisor, and that he and his two co-defendants were merely transporters of the drugs.

Sentencing occurred on June 8, 2007.  (D.E. 55; see also generally D.E. 74, Sentencing Transcript ("S. Tr.").)  Ayers and his two co-defendants were sentenced during the same proceeding. (See generally S. Tr.)   Ayers' counsel reiterated his objections to both the career criminal enhancement and to the adjustment for Ayers' leadership role in the offense.  The Court heard testimony from both Ayers and his co-defendants regarding his role in the offense and argument from counsel on the objections.  Ultimately, the Court concluded that it did not believe Ayers' description of his role in the offense, and overruled both objections.  (S. Tr. at 11.)

In sentencing Ayers, the Court commented on his lack of believability, particularly as to his description of his role in the offense.  (S. Tr. at 31.)  Nonetheless, the Court agreed with Ayers' counsel that a sentence of 188 months was high for the offense.  (S. Tr. at 37.)  Accordingly, the Court imposed a non-guidelines sentence below the advisory guideline range pursuant to 18 U.S.C. § 3553(a), sentencing Ayers to 155 months in custody, to be followed by a four-year term of supervised release. (S. Tr. at 38; D.E. 55, 58.)  The Court downwardly departed to a $0 fine and also imposed a $100 special assessment.  (S. Tr. at 38; D.E. 55, 58.)  Judgment of conviction and sentence was entered on June 13, 2007. (D.E. 58.)

Despite his waiver of appellate rights, Ayers filed a timely notice of appeal.  (D.E. 62.)  On appeal, his counsel moved to withdraw and filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967).  (D.E. 96).  Ayers filed a response.  The Fifth Circuit opinion did not rule on

Ayers' claim of ineffective assistance of counsel, finding that the record was insufficiently developed at the time to consider the claim. (D.E. 96 at 1.) Setting aside that claim, the Court found no nonfrivolous issues for appeal and therefore dismissed the appeal on December 10, 2008. (D.E. 96 at 2.)

Ayers' § 2255 motion and supporting memorandum were received by the Clerk on August 10, 2009. (D.E. 98, 99.) His supplement and supporting memorandum were received on August 27, 2009. (D.E. 101, 102.) The motion and supplement are timely.

### III.  MOVANT'S ALLEGATIONS

In his motion and supplemental motion, as well as his supporting memoranda, Ayers raises a number of different grounds for relief.  Inexplicably, the government does not include some of them in its response, nor does it respond to them.  As set forth in his initial motion, however, Ayers' first three grounds for relief all allege that he was denied effective assistance of counsel at sentencing.  First, he argues that counsel was ineffective for failing to challenge his career criminal enhancement.  (D.E. 98 at 5; D.E. 99 at 9-12.)  In particular, Ayers claims that his counsel failed to obtain a copy of the relevant court documents that show there was no intervening arrests between the convictions listed in paragraphs 40, 41, and 42 of the PSR, and that Ayers pleaded "guilty to all three charges simultaneously in the same court room and was sentenced in the same courtroom on the same day." (D.E. 99 at 2.)  He thus argues that they should not have been counted separately and do not support the career criminal enhancement.

Second, Ayers contends that his sentencing counsel was ineffective because he was not able to "properly" challenge the PSR's recommendation of a leadership role for Ayers.  (D.E. 98 at 6; D.E. 99 at 2-3, 7-8.)   Specifically, he claims that he was nothing more than a transporter like his

7

co-defendants and that, in any event, there were only three persons involved in this case and that any leadership role should have been only two levels.  (D.E. 99 at 2-3, 7-8.)

Third, he contends that counsel "allow[ed an] improper assessment of criminal history points."  (D.E. 98 at 8; D.E. 99 at 4.)  Ayers argues that no points should have been awarded for the convictions listed in paragraphs 33 and 38 of his PSR.  He argues that Paragraph 33 was a conviction for a violation of a local ordinance, "Sales of Fireworks Without a Permit" and should not have been counted under the guidelines.  Similarly, he contends that Paragraph 38 was a mere fish and game violation and should not have been scored any points.  As to Paragraph 37, which involved a domestic violence charge, he claims that no points should have been awarded because his sentence was less than 30 days.  (D.E. 99 at 5-6.)  He also reiterates his objections to the convictions in Paragraphs 40, 41, and 42 being scored separately.  (D.E. 99 at 6.)  He claims that if counsel had lodged the above objections, he would have had only six (6) criminal history points and his criminal history category would have been a III, instead of a VI.  With an offense level of 27, his advisory guideline range under his calculations should have been 87 to 108 months.  (D.E. 99 at 6.)

Ayers' fourth ground for relief is that his plea was coerced.  In his supplemental motion, he provides additional allegations in support of this claim.  He claims that his guilty plea was induced by erroneous legal advice given by his counsel and thus that his plea and his waiver were not knowing and voluntary.  In challenging the validity of his plea and plea agreement, he alleges that:

> (1) counsel advised him he could appeal if the Court departed from the Guidelines;
>
> (2) he did not understand he was waiving his right to effective assistance of counsel at sentencing and that he would not have pleaded guilty had he understood this;
>
> (3) he did not understand the consequences of the waiver of because

he was on medication that affected his ability to comprehend the consequences of the waiver, that counsel knew this, and nonetheless induced him to plead guilty while under medication; and

(4) counsel advised him that he would receive approximately a sixty-month sentence under the guidelines and that this erroneous advise rendered his plea involuntary, because he would not have pled guilty had he known he would be classified as a career offender and receive a much longer sentence.

(D.E. 101 at 1-3; D.E. 102.)

Ayers also argues that the Court's sentencing of him as a career offender constituted an "upward departure," not contemplated by the plea agreement. (D.E. 101 at 2.) He appears to claim that he was therefore entitled to appeal and to file a § 2255 motion because his waiver contains an exception allowing him to appeal "an upward departure ... which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b)." (D.E. 101 at 2-3.) Finally, he argues that when he learned he was to be sentenced as a career offender, he instructed his counsel to withdraw his guilty plea, and that Mr. Garza "lied" by claiming that it was too late to do so. (D.E. 101 at 3.)

The United States does not respond directly to Ayers' claims of ineffective assistance of counsel at sentencing. Instead, the government focuses on his claims regarding his plea agreement and waiver. The United States argues that Ayers' challenges to the voluntariness of his plea agreement fail on their merits, and that his waiver of § 2255 rights "is valid and subject to specific performance." (D.E. 104 at 6.) It further contends that, even if there were no valid waiver and his claims were properly before the Court, they fail on their merits. (Id.)

In his reply, Ayers reiterates many of his challenges to the validity and applicability of his waiver of § 2255 rights, and again argues that his guilty plea was not knowing and voluntary. (D.E. 109 at 2-3, 4-6.) He also argues that the United States is incorrect in representing that Ayers has not

presented a claim of actual innocence. That is, he claims he is innocent "of being a career offender." He claims that this "actual innocence" serves as an exception to his waiver and falls outside its scope. (D.E. 109 at 3.)

Ayers also refers to what he deems a "long line of complaints" against counsel Garza in other cases indicating a lack of truthfulness and states that "where there's smoke, there's fire." (D.E. 109 at 6.) He urges that these "complaints" indicate a lack of truthfulness on Garza's part.

As set forth herein, the Court is able to determine based on the record before it that none of Ayers' claims entitle him relief.

## IV.  DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

### B.    Ayers' Waiver of § 2255 Rights

As discussed infra at Section IV.D., Ayers' claims of ineffective assistance of counsel at sentencing are not properly before the Court because they fall within the scope of his § 2255 waiver,

which the Court determines herein is valid and enforceable.  See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).  That is, his claim of ineffective assistance of counsel based on counsel's alleged failure to raise certain objections at sentencing are not claims that directly affect the validity of his plea or waiver.  Thus, they fall within the scope of his waiver and are barred.  See infra Section IV.D.  Even if they were properly before the Court, moreover, they fail on their merits.  See infra Section IV.E.

Ayers' claim that his counsel misled him about the consequences of his plea and his claims alleging that his plea was not knowing or voluntary are claims that challenge the validity of his plea and consequently his waiver.  See White, 307 F.3d at 343-44.  Thus, the Court turns to the merits of these claims.

## C.    Alleged Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal

to an ineffective assistance claim.").

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Ayers must show that, absent his counsel's deficiencies, he would have proceeded to trial.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here.

The rearraignment transcript in the case clearly establishes that Ayers' decision to plead guilty was his own and that it was entirely voluntary.  (See supra at pages 3-5 (setting forth pertinent parts of plea colloquy).)  Significantly, Ayers was specifically advised by the Court at his rearraignment that he might receive an increased sentence based on his role in the offense.  He was also specifically advised that his offense level could be increased based on his prior criminal history. He told the Court that he understood.  (R. Tr. at 34-35.)  He also told the Court that no one had promised him anything other than what was in the plea agreement.  (R. Tr. at 27-28.)

Thus, Ayers' belated claim that his plea was somehow involuntary or unknowing because his counsel did not advise him of the possible factors that could increase his sentence or promised him a sixty-month sentence is a claim that is flatly contradicted by the record.  Ayers' sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Ayers' sworn

12

statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, and that no one was forcing him to plead guilty. See Wilkes, 20 F.3d at 653. They also clearly show that he was aware that he could be sentenced to a higher sentence because of his prior convictions and due to his role in the offense, and that no one had promised him any particular sentence or leniency.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Ayers told the Court that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 6.) Had counsel made a promise or given Ayers an estimate of a sixty-month sentence, then presumably Ayers would have been dissatisfied since the PSR was recommending an advisory guideline range more than three times the alleged estimate. Ayers' expressed satisfaction with counsel after having seen the PSR, therefore, further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.

The Court also finds Ayers' other allegations of ineffective assistance of counsel as to his plea to be without merit. His allegation that his counsel told him he could still appeal if the Court upwardly departed from the guidelines was accurate advice. There was no upward departure in this case, however. Instead, the Court in fact imposed a sentence that was below Ayers' advisory guideline range. Thus, even assuming counsel gave that advice, it in no way invalidates Ayers' § 2255 wavier.

To the extent Ayers claims he did not understand he was waiving his right to bring claims of ineffective assistance of counsel at sentencing, this challenge likewise fails. The Court explained the waiver provision to Ayers, including a statement that he was waiving his right to bring ineffective assistance of counsel claims, and Ayers said he understood. (R. Tr. at 24-25.) This

claim is without merit.

Similarly, Ayers' claim that he was on medication that prevented him from understanding the proceedings fails because it is contradicted by his own sworn testimony. Specifically, he told the Court at the rearraignment that the drugs he was taking did not affect his thinking. (R. Tr. at 13.) Nothing he has presented in his § 2255 motion overcomes the presumption of truthfulness accorded his rearraignment testimony. See Lampaziane, 251 F.3d at 524. This claim fails, too.

Ayers' final challenge to his plea alleges that, after he received his PSR, he told his counsel he wanted to withdraw his guilty plea, and his counsel told him he was not permitted to do so and refused to file the motion. The Court finds that no deficiency or prejudice as a result of this claim. The Court expressly informed Ayers at his rearraignment that even if he was later dissatisfied with his proposed sentence or sentence, he would not be permitted to withdraw his guilty plea. (R. Tr. at 28-29.) Ayers testified that he understood. (Id. at 29.) Thus, Ayers knew at the time of his guilty plea that he would not be permitted to withdraw it later. Moreover, even if his counsel had filed a motion to withdraw the guilty plea prior to sentencing on the grounds Ayers now urges, it would not have been granted. Thus, Ayers cannot show prejudice.

In short, none of Ayers' challenges to the validity of his plea can overcome his testimony at the rearraignment to now show that he would have insisted on going to trial but for counsel's performance. Because Ayers cannot prove the prejudice prong of the Strickland inquiry, it is unnecessary to determine whether his counsel's performance was deficient. His claims of ineffective assistance in the plea process fail.

Because the Court concludes that Ayers' challenges to the validity of his plea agreement fail, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid

and enforceable.  Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**D.      Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment that Ayers understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable.  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Ayers' statements under oath are entitled to a strong presumption of truthfulness.  Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his waiver was knowing and voluntary.  All of his remaining claims, which allege either errors by the Court at sentencing or ineffective assistance of counsel at sentencing, clearly fall within the scope of that waiver.

Moreover, even if his remaining claims were properly before the Court, they would not entitle Ayers to relief, as discussed in the following sections.

**E.      Ineffective Assistance of Counsel At Sentencing**

In order to establish prejudice as to his claims that his counsel was constitutionally ineffective at sentencing, Ayers must show a reasonable probability that, but for counsel's alleged errors, he would have received a lesser sentence.  See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000); United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). This is a showing that Ayers has not made.

As noted, Ayers points to three alleged errors by counsel at sentencing.  First, he claims that counsel was ineffective for failing to challenge his career criminal designation.  Second, he argues that counsel failed to "properly" challenge the leadership role assigned to Ayers.  Third, he contends

that counsel allowed an improper assessment of criminal history points for the convictions in Paragraphs 33, 37, and 38, and reiterates that he believes paragraphs 40, 41, and 42 (two of which were used to support the career offender enhancement) should have been scored collectively instead of separately.

Ayers' claims that his counsel was ineffective at sentencing fail because he cannot show he would have received a different sentence, had his counsel raised the objections as Ayers contends. Thus, even if these claims were not barred by his waiver, they fail on their merits as discussed herein.

### 1.    Career Offender

If a defendant is a career offender, U.S.S.G. § 4B1.1 requires that he be sentenced at a higher offense level and a criminal category VI.  A defendant is a career offender if:  (1) the defendant was at least eighteen years old at the time he committed the offense of conviction; (2) the offense of conviction is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.  "[T]he sentences for at least two of the felony convictions must be counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2(c).  If sentences are "related," however, then they should not be counted separately.  U.S.S.G. § 4A1.2 ("Prior sentences imposed in related cases are to be treated as one sentence.")

Ayers argues that the two convictions utilized to establish his career offender status (as well as a third conviction) were related and should have been treated as a single offense.  The first of these offenses involved Ayers selling marijuana to undercover officers on August 6, 2004.  He pleaded guilty to delivery of cannabis and possession of cannabis in the Circuit Court of

16

Hillsborough County, Florida, in Cause Number 04-014821.  (PSR at ¶ 40.)   The second involved Ayers selling marijuana to undercover police officers on August 3, 2004, and Ayers again pleaded guilty to delivery of cannabis and possession of cannabis, in the Circuit Court of Hillsborough County, Florida, in Cause Number 04-014977 (PSR at ¶ 41.)  The third was not used to support his career offender enhancement, but was scored separately.  It arose from a search of Ayers while incarcerated, on August 7, 2004, at which time a deputy found a plastic baggie containing marijuana on his person.  (PSR at ¶ 42.)  Ayers pleaded guilty to one count of introduction of contraband into a detention facility, and one count of possession of cannabis, in Cause Number 04-01585 in the Circuit Court of Hillsborough County.

The three cases had separate indictments and case numbers, and there were separate judgments entered in each case, although Ayers was sentenced in all three cases on the same day, October 21, 2004.  Additionally, the sentence imposed in each of the three cases was 364 days in jail, and in each case the sentence was ordered to run concurrent with the other two cases.  This information was before the Court at the time of sentencing and is also supported by the documents provided by Ayers in conjunction with his § 2255 motion.  (See D.E. 98 at Exhibits A, B, C.)  There was never any formal order of consolidation, and Ayers has not shown that the cases were ever consolidated.

The determination of whether convictions are related is one made by reference to U.S.S.G. § 4A1.2.  Ayers was sentenced using the 2006 edition of the United States Sentencing Guidelines Manual.  (PSR at ¶ 13.)  Under U.S.S.G. § 4A1.2(a)(2), prior sentences imposed in "related cases"

are to be considered as one sentence when calculating a defendant's criminal history score.[4]  The

Commentary to this section instructs that a sentencing court should consider previous cases to be

related if they occurred on a single occasion, were part of a single scheme, or "were consolidated

for trial or sentencing."  U.S.S.G. § 4A1.2, application note 3; see United States v. Hayes, 532 F.3d

349, 353 & n.3 (5th Cir. 2008) (discussing the pre-amendment version).  The Commentary adds that

"[p]rior sentences are not considered related if they were for offenses that were separated by an

intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second

offense)."

       As an initial matter, it appears, although it's not entirely clear from the record, that the

convictions referenced in Paragraphs 40 and 41, on the one hand, and Paragraph 42, on the other,

were separated by an intervening arrest.  That is, Ayers was in jail apparently due to his arrests for

Paragraph 40 and 41 at the time that he committed the conduct in Paragraph 42.  Thus, Paragraph

42 may be properly scored separately under either version of U.S.S.G. § 4A1.2.

       In any event, as to the offenses in all three paragraphs (40, 41 and 41), even though the

sentences were imposed on the same day and ordered to run concurrent, they were not considered

"related" offenses under the guidelines in effect at the time of Ayers sentencing because they were

never consolidated.  Those convictions were therefore properly scored as separate offenses, and

properly scored 2 points each.

       The Court recognizes that, under the amended version of the guidelines, effective November

1, 2007,  the result would likely have been different.  That is, under the amended version of the

---

       [4]  Ayers was sentenced before the 2007 amendments to the United States Sentencing Guidelines that
altered Section 4A1.2.

guideline, if there were no intervening arrest, a defendant's prior sentences can be counted as a single sentence if they were imposed on the same day, as Ayers' were. <u>See</u> U.S.S.G. § 4A1.2(a)(2). Thus, under the amended § 4A1.2, Ayers' offenses in Paragraphs 40 and 41, at least, would have been treated as a single sentence, and Ayers would not have been deemed a career offender.

The Court further recognizes that, although the amendment to Section 4A1.2(a)(2) was not retroactive, Ayers could be arguing that it should have been applied to him because his conviction was not affirmed by the Fifth Circuit until December 10, 2008, and the amendments went into effect November 1, 2007. Extending the argument, Ayers could have made the argument that appellate counsel was deficient for failing to raise the issue of the amended guidelines while Ayers' appeal was still pending and before his conviction became final. Notably, however, Ayers has not raised any claim of ineffective assistance based on any actions or omissions by ***appellate*** counsel. Even if he had raised this precise claim, however, he still could not establish prejudice.

In a very similar case, the Fifth Circuit issued an unpublished opinion refusing to apply Amendment 709 (which amended to U.S.S.G. § 4A1.2) on direct appeal and refusing to remand for re-sentencing. <u>United States v. Meza</u>, 250 Fed. Appx. 651, 2007 WL 3003049 (5th Cir. Oct. 16, 2007). In <u>Meza</u>, the defendant argued three of his prior conviction should have been counted as related cases instead of separate sentences, because there was a joint plea agreement, a single arraignment and a single sentencing hearing. He also argued that his prior convictions would count as a single sentence pursuant to the amended guideline § 4A1.2 because they were imposed on the same day. 250 Fed. Appx. at 653.

The appellate court acknowledged that the defendant's three prior convictions would qualify as a single sentence under the amended guideline. 250 Fed. Appx. at 655. It further noted that

clarifying amendments to the guidelines, rather than substantive amendments, "may be considered on direct appeal even when they were not effective at the time of sentencing." Id. The Meza court then went on to consider various factors to determine whether Amendment 709 was a substantive change or merely a clarification and found that the amendment was in fact a substantive change. Because it was a substantive amendment and not a clarifying one, Meza could not benefit from Amendment 709 either on direct appeal, or in the form of remand for resentencing. Id. at 655-56. The same reasoning would have applied to any similar claim raised by Ayers' appellate counsel. Accordingly, Ayers has not shown a reasonable probability that the result of his case would have been different, even if appellate counsel had raised this issue.

Moreover, Ayers waived his right to appeal, and that waiver would apply even in the face of a subsequent change in law. Put differently, the change to the guidelines while Ayers' appeal was pending would not have benefitted him because his appellate waiver would still have barred a claim that the Court erred in applying the guidelines. See, e.g., United States v. McKinney, 406 F.3d 744, 746-47 & n.5 (enforcing a valid appellate waiver even in the face of a subsequent change in the law).

For all of these reasons, Ayers' claim of ineffective assistance of counsel due to counsel's failure to argue more forcefully that he was not a career offender, fails.

## 2. Leadership Role

Similarly, Ayers' claim that his counsel was somehow ineffective for failing to object to the increase in his offense level for his role in the offense is without merit. As an initial matter, counsel in fact objected and the Court overruled the objection. More significantly, however, both of Ayers' co-defendants pointed him out as having greater knowledge of the offense, of being more involved

20

and of directing them and, indeed, even keeping them uninformed about the true purpose of their trip until shortly before they were stopped at the checkpoint.

Ayers now argues that he was "set up" by his co-defendants, and has provided a number of e-mail messages and letters that purportedly reflect conversations that other inmates had with one of his co-defendants, in which the co-defendant admitted that Ayers was used and set up as the leader, even though he was not. Setting aside the fact that the e-mails and statements are not direct admissions, even if they had been before the Court at sentencing, there's not a "reasonable probability" that the outcome would have been different. It was not the statements of Ayers' co-defendants alone that led the Court to conclude the leadership enhancement should apply, but also the opinions of the agents and other corroborating evidence that Ayers was not being truthful.

The Court's conclusion that the leadership role enhancement should be applied was amply supported by the facts before it.[5] Even if counsel had presented this additional investigation or information at the time of sentencing, the Court does not find a "reasonable likelihood" that the sentence would have been different.

Accordingly, Ayers' ineffective assistance of counsel claim on this ground fails.

### 3. Other Scored Convictions

The Court has also reviewed the other convictions Ayers now alleges that his counsel should have challenged, but each of them was properly scored. Again, at least one of those convictions probably would not be scored under the *amended* version of U.S.S.G. § 4A1.2, but they were

---

[5] There is also no validity to Ayers' argument that there were not at least five people involved in the offense, which is required for a three-level adjustment under U.S.S.G. § 3B1.1(b). The PSR references, in addition to Ayers and his two co-defendants, a Hispanic male who paid for the rental of the RV, and a female who transported the three defendants back and forth from a home where they left the RV for three days to a Motel 6. Thus, the facts of the offense fully support the Court's conclusion that at least five people were involved in the offense.

nonetheless properly scored under the version of the guidelines applicable at the time of Ayers' sentencing.

For example, Ayers claims that the offense in Paragraph 38 (Possession of an American Alligator and Parts Thereof) should not have been assessed any points because it was a fish and game violation.  Under the revised § 4A1.2(c)(2), fish and game violations may not be scored.  Under the version applicable at the time of Ayers' sentencing, however, a fish and game violation is counted if the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days.  According to Paragraph 38, Ayers was initially sentenced to six months probation, but was later revoked and he served 30 days custody as to each of two counts.  Thus, the offense in Paragraph 38 was properly scored.

Ayers also challenges one point he received for the offense of "Sale of Fireworks Without Permit" in Florida (PSR at ¶ 37), claiming that it was a violation of a local ordinance and thus should not have been assessed a criminal history point.  He presents no evidence that the offense was for violation of a local ordinance, however.  Moreover, the Court's own research reveals that there is Florida *state* statute prohibiting and criminalizing the sale of fireworks without a permit.  <u>See generally</u> Fl. St. Ann. §§ 791.02, 791.06 (making it a misdemeanor in the first degree to sell fireworks without a permit and imposing criminal penalties under Fl. St. Ann. § 775.082 or 775.083); <u>cf.</u> F. St. Ann. at §§ 775.082-083 (providing that a person who has been convicted of a misdemeanor of the first degree may be sentenced to a definite term of imprisonment not exceeding one year).  Thus, he has not shown any error.

Similarly, Ayers contends that counsel should have objected to the two points he was scored for a prior conviction for two counts of battery because the sentence was less than thirty days.  (D.E.

22

98 at 5.)  He contends that the PSR is incorrect that he received probation and points to the docket sheet in that offense, attached to his motion as Exhibit E.  (D.E 98, Exhibit E.)  The PSR indicates that Ayers was initially sentenced to twelve months "deferred adjudication probation" as to each count, but that his probation was revoked on October 27, 2009 and he was required to serve 90 days in custody as to each of the two battery counts.  (PSR at ¶ 37.)  Even the docket sheet submitted by Ayers reflects that he was found to have violated his probation and that his probation was revoked on October 27, 2009.  The docket sheet also references a 90-day sentence.  Thus, nothing submitted by Ayers now suggests that the offense of battery was improperly scored.

Accordingly, even if counsel had raised these objections, the result of the proceedings would not have been different.  See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

In short, Ayers has not shown a reasonable probability that he would have received a different sentence and thus cannot establish prejudice.  Even if they were not barred by his waiver, therefore, his claims of ineffective assistance of counsel at sentencing fail.

In sum, while Ayers' ineffective assistance claim as to his plea is denied on the merits, his remaining allegations of ineffective assistance of counsel are barred by his waiver and also fail on their merits. For these reasons, Ayers' § 2255 motion is DENIED in its entirety.

## F.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C.

§ 2253(c)(1)(A).  Although Ayers has not yet filed a notice of appeal, the § 2255 Rules instruct that this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.  The Court thus turns to whether Ayers is entitled to a COA.

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right **and** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ayers is not entitled to a COA as to any of his claims.  That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claims as to his plea.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining ineffective assistance of counsel claims, or that they fail on their merits.

24

**V.  CONCLUSION**

For the above-stated reasons, Ayers' motion to supplement (D.E. 110) is GRANTED and the Court has considered the supplemental materials.  His motion under 28 U.S.C. § 2255 (D.E. 98) is DISMISSED WITH PREJUDICE.  The Court also DENIES him a Certificate of Appealability.

It is so ORDERED this 14th day of June, 2010.

Janis Graham Jack
United States District Judge